# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LINDA MATEIU,       ) | |
| ) | |
| Plaintiff,    ) | |
| ) | **CIVIL ACTION** |
| v.    ) | |
| ) | **No. 12-1167-JWL** |
| CAROLYN W. COLVIN,[1]    ) | |
| Acting Commissioner of Social Security,    ) | |
| ) | |
| Defendant.    ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security
(hereinafter Commissioner) denying Social Security disability(SSD) benefits and
Supplemental Security income (SSI) benefits under sections 216(i), 223, 1602, and
1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and
1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's final
decision, the court ORDERS that judgment shall be entered pursuant to the fourth
sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

_____

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of
Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil
Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the
defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

# I. Background

Plaintiff applied for SSD and SSI in May 2010, alleging disability beginning November 1, 2008. (R. 14, 130-38). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 14, 117-19, 125-26). Plaintiff's request was granted, and Plaintiff appeared with counsel for a video hearing before ALJ Deborah J. Van Vleck on October 17, 2011. (R. 14, 80-82). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 14, 80-116). On December 1, 2011, ALJ Van Vleck issued a decision finding that Plaintiff has severe physical and mental impairments which limit her to the performance of a range of light work and preclude performance of her past relevant work. (R. 14-22). Nevertheless, she determined that when considering Plaintiff's age, education, work experience, and residual functional capacity (RFC), there are jobs in significant numbers in the economy that Plaintiff is able to perform, represented by jobs such as a can filling machine tender, a folding machine operator, a sub assembler, a pharmaceutical processor, a dowel inspector, or a printed circuit board screener. Id. at 23-24. Therefore, she determined that Plaintiff is not disabled within the meaning of the Act, and denied her applications for benefits. Id. at 24-25.

Plaintiff submitted a request for review of the hearing decision along with a Representative Brief. (R. 7-10, 204-07). The Appeals Council made the Representative Brief a part of the administrative record in this case, and considered it in deciding whether to grant review of the decision. (R. 1-2, 4). However, the Council found that the brief

did not provide a basis for changing the ALJ's decision, found no reason under the rules of the Social Security Administration to review the decision, and denied the request for review. Id. Therefore, the ALJ's decision became the final decision of the Commissioner; (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute

[its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).

When deciding if substantial evidence supports the ALJ's decision, the mere fact that there is evidence in the record which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and noting that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Moreover, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if she can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and

which is expected to result in death or to last for a continuous period of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084.  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2011);[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

---

[2]Because the Commissioner's decision was issued on December 1, 2011, all citations to the Code of Federal Regulations in this opinion refer to the 2011 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2011, unless otherwise indicated.

assesses claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes three claims of error in the ALJ's decision. She argues first that the ALJ failed to base her RFC assessment upon substantial record evidence and failed to explain why the opinion of the state agency consultant should outweigh the opinions of her treating physician and psychologist. She next argues that the ALJ failed to provide specific, legitimate reasons for discounting the opinion of her treating physician, Dr. Francis, failed to explain the relative weight accorded to each regulatory factor in weighing Dr. Francis's opinion, and erred in according greater weight to the opinion of a state agency consultant psychologist than to Dr. Francis's treating source opinion. Finally, she argues that the ALJ erred in evaluating the credibility of Plaintiff's

allegations of symptoms resulting from her impairments. The Commissioner argues that

the ALJ properly evaluated the medical opinions of both Dr. Francis and Dr. Allen,

properly evaluated the credibility of Plaintiff's allegations, and properly assessed

Plaintiff's RFC. The court finds no error in the decision at issue here. Because

evaluation of medical opinions and of the credibility of Plaintiff's allegations of

symptoms is a necessary part of every proper RFC assessment, the court will address the

alleged RFC errors last, and because the court's consideration of the ALJ's credibility

determination is deferential, the court begins with consideration of the alleged error in the

ALJ's credibility determination.

## III.    Credibility

The ALJ found that Plaintiff's impairments might cause the limitations alleged by

Plaintiff and that there is a nexus between Plaintiff's allegations regarding her limitations

and those impairments. But, after considering all of the record evidence she found that

"the claimant's statements concerning the intensity, persistence and limiting effects of

these symptoms are not credible." (R. 20). The ALJ stated her reasons for finding that

Plaintiff's allegations are not credible:

> The undersigned finds inconsistencies between the record and the
> claimant's testimony that make the alleged severity of symptoms less
> credible. [(1)] Despite allegations of debilitating mental illness, the
> claimant did not seek treatment from a psychiatrist until January 2010.
> Further, [(2)] although she reported that she never left the house, she was
> able to go on a day trip and an overnight road trip since the alleged
> disability onset date. The claimant also [(3)] reported that she stopped
> working as an electrician in 2009 because she could mentally not take it

> anymore and was laid off.  However, she told Ms. Towner that she ceased
> working due to a lack of transportation (Exhibit 2F at 16 [(R. 279)]).

(R. 22) (numbering added for ease of discussing the ALJ's rationale).  The ALJ noted that

the credibility of Plaintiff's allegations was also reduced because (4) she testified that

before she quit drinking, she was drinking four or five beers a day, but she told her

counselor, Ms. Towner, that she had been drinking a 30-pack of beer a day.  Id. (citing

Ex. 2F at 16 (R. 279)).  Although she did not specifically relate it to her credibility

determination, the ALJ also noted that Plaintiff reported she could not pay bills or handle

a bank account, but testified at the hearing that she could pay bills and take care of a bank

account.  (R. 18); see also (R. 105, 173).

       An ALJ's credibility findings deserve special deference, Lax, 489 F.3d at 1089,

and her determinations in that regard are generally treated as binding on review.  Talley v.

Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413

(10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of

fact" and will not be overturned when supported by substantial evidence.  Wilson, 602

F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's

credibility determinations, the court will usually defer to the ALJ on matters involving

witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see

Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an

absolute rule").  "However, '[f]indings as to credibility should be closely and

affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings.'" <u>Wilson</u>, 602 F.3d at 1144 (quoting <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988)); <u>Hackett</u>, 395 F.3d at 1173 (same).

Plaintiff first argues that the ALJ found her not credible because the ALJ found that her activities of daily living were "essentially normal," and she goes on to explain how, in her view, her activities of daily living are not normal, and support the credibility of her allegations. (Pl. Br. 22-24). Plaintiff's argument has a singularly narrow basis in the decision at issue. To be sure, the ALJ discussed Plaintiff's activities of daily living in the decision. (R. 17). However, that discussion occurred during the ALJ's application of the Commissioner's psychiatric review technique for evaluating mental impairments at step three of the sequential evaluation process. Although she found Plaintiff has no restrictions in activities of daily living, she also acknowledged Plaintiff's report of "activities she described as OCD." (R. 17). Most importantly, and contrary to Plaintiff's argument, she did not rely upon the discussion of activities of daily living to support her credibility determination.

Plaintiff next argues that the ALJ "chose to infer that simply because Mateiu went on one day trip and one overnight trip, that she must not be in much physical pain." (Pl. Br. 24). She asserts that "there is not one substantial piece of evidence that indicates Mateiu did these trips easily or that doing these two short trips such as these [sic] was a normal part of her character." (Pl. Br. 24). Again, Plaintiff misconstrues the decision. The ALJ neither said nor implied anything regarding pain when discussing the trips. Rather, she noted that Plaintiff alleged she was unable to leave the house, but that she had

taken two road trips which tend to detract from the credibility of this allegation. (R. 22).

Earlier, the ALJ had more fully discussed the issue:

> She testified that she did not leave the house except to go to the store or a
> doctor's appointment. However, she was able to make two different road
> trips to Branson in June 2010 and Bridal caves in September 2009
> (testimony). When they went to Branson, they stayed overnight and ate in
> restaurants (testimony). She also rode the go-carts with her son
> (testimony). She did not report any difficulties with respect to these trips,
> other than having claustrophobia in the caves.

(R. 17-18). This evidence supports the ALJ's finding that Plaintiff's allegations are not

credible.

The court finds another comment is necessary regarding the ALJ's credibility

determination. Much of Plaintiff's credibility argument is merely an assertion that the

ALJ viewed the evidence regarding credibility wrongly, and an explanation of how the

evidence should properly be viewed to provide a "correct" determination that Plaintiff's

allegations are credible. The question before the court is not how the evidence might

alternatively be viewed to support a finding different than the finding of the ALJ, but

rather the question is whether the ALJ applied the correct legal standard and whether the

record evidence supports her finding. As the court has already noted above, the court

may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."

Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

The mere fact that there is evidence in the record which might support a contrary

finding will not establish error in the ALJ's determination. "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative

agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo, 383 U.S. at 620. Plaintiff has shown no error in the ALJ's credibility finding.

## IV.     Evaluation of the Medical Opinions

Plaintiff argues, "The ALJ failed to provide the required "specific, legitimate reasons" for only giving the opinions of Mateiu's treating physician, Dr. Francis, "moderate" weight and instead, chose to rely primarily upon the assessment of non-examining sources." (Pl. Br. 18). She argues that the ALJ "did not ever recognize Mateiu's and Francis's doctor-patient relationship but instead maligned Dr. Francis by simply stating his notes were brief and predominantly illegible," and that "the ALJ failed to provide any further explanation or citation to what specific medical evidence did not support Dr. Francis's opinion." Id. at 19. She argues that Dr. Chatain's opinion "specifically supported the fact that Mateiu had PTSD, Bipolar and an unspecified anxiety disorder, confirming Dr. Francis's opinion," and "specifically stated that Mateiu should continue not only her psychological treatment, but also her medication monitoring by her prescribing physician," Dr. Francis. (Pl. Br. 19). Plaintiff argues that it was error to accord greater weight to the opinion of the state agency reviewing psychologist, Dr. Allen, because he could not possibly have reviewed the entire record because his review occurred more than 14 months before the hearing. Id. at 19-20. Finally, Plaintiff argues

that the ALJ "failed to discuss any of the other regulatory factors, and failed to explain the relative weight accorded to each factor in this case."  Id. at 20.

The Commissioner argues that the ALJ properly evaluated the medical opinion evidence and articulated her reasons for the weight accorded, and that substantial record evidence supports those reasons.  (Comm'r Br. 4-6).  She argues that the ALJ properly noted that Dr. Chatain's opinion did not address Plaintiff's functional abilities.  Id. at 6-7.  She argues that although Dr. Allen is a nonexamining source, the ALJ properly accorded his opinion greater weight than Dr. Francis's opinion because it was more consistent with the record evidence.  Id. at 7-8.

## A.    Standard for Evaluating Medical Opinions

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012).  A physician who has treated a patient frequently over an extended period of time (a treating source)[3] is expected to have greater

---

[3]The regulations define three types of "acceptable medical sources:"

insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [she] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p,

---

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.

"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions"). The threshold to deny controlling weight, however, is low. SSR 96-2p explains that "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Supreme Court in Perales, 402 U.S. at 401(substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2012). To deny controlling weight, the ALJ need only find other evidence in the record which is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source] medical opinion." Id.

The Tenth Circuit has explained the nature of the inquiry regarding a treating source medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with the other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors

14

are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). When a treating source opinion is not given controlling weight, all of the medical opinions in the record must also be weighed in accordance with the regulatory factors. 20 C.F.R. §§ 404.1527(d), 416.927(d) ("we consider all of the [regulatory] factors in deciding the weight we give any medical opinion.").

After considering the factors, the ALJ must give reasons in the decision for the weight she gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, [s]he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B. The ALJ's Findings

The ALJ recognized that the record contains opinion evidence from four healthcare professionals, and summarized the opinions, explained the weight accorded

each opinion, and provided the rationale for her evaluation.  She first discussed the opinion of Dr. Francis.  (R. 20).  She noted that after a break in mental health treatment between 2003 and 2010, Plaintiff had once again sought treatment in January 2010 from Dr. Francis.  Id. (citing R. 289).  She recognized that Plaintiff saw Dr. Francis thereafter once a month, and that in December 2010, Dr. Francis submitted a medical source statement in which he opined that Plaintiff has "marked and extreme limitations with respect to the claimant's understanding and memory; sustained concentration and persistence; social interaction; and adaption."  Id. (citing Ex. 9F (R. 329-30)).  She explained that she gave this opinion only "moderate weight" and explained that she had discounted the opinion because Dr. Francis (1) did not provide a discussion to support the opinion; because (2) his treatment notes were brief, (3) were predominately illegible, and (4) did not support the opinion; because (5) when the treatment notes described chronic, unrelenting anxiety and PTSD (post-traumatic stress disorder) in December 2010, they also noted that Plaintiff's mood was relatively stable; and because (6) on intake Dr. Francis assigned a relatively benign GAF[4] score and his treatment notes do not indicate any changes in the score thereafter.

---

[4]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000).  GAF is a classification system providing objective evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

The ALJ noted that Plaintiff began therapy with Ms. Towner, a Licensed Professional Counselor once a week in February 2010, but that the record does not contain any therapy notes after February 2011. (R. 20). She noted that Ms. Towner completed a written statement in October 2011 opining that Plaintiff's OCD (obsessive-compulsive disorder) and anxiety created great difficulty for Plaintiff to complete simple daily tasks. Id. The ALJ recognized that Ms. Towner did not provide a particular RFC opinion, and accorded "little weight" to her opinion because (1) she is not an "acceptable medical source," (2) her opinion is not consistent with her treatment notes, and (3) her opinion is not consistent with the medical record. Id.

The ALJ next discussed the psychological evaluation completed by Dr. Chatain in June 2011. Id. at 20-21. She recognized Dr. Chatain's opinion that Plaintiff's psychological functioning was impaired, and her recommendation that Plaintiff continue treatment and medication. Id. at 21. She also recognized Dr. Chatain's diagnoses of PTSD, panic disorder with agoraphobia, and bipolar disorder, and the GAF score of 45 assigned by Dr. Chatain. (R. 21). She noted that Dr. Chatain did not provide an RFC opinion, and accorded "moderate weight" to the opinion, but noted that "the purpose of her evaluation was only to determine if the claimant required continued medical assistance." Id.

The ALJ also noted the opinion of the state agency psychological consultant, Dr. Allen. She recognized his opinion "that the claimant had moderate limitations with respect to the ability to carry out detailed instructions, interact appropriately with the

17

general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others." Id. She explained that she accorded this opinion "great weight" because Dr. Allen (1) reviewed the entire medical record, (2) is experienced in evaluating mental impairments, and because his opinion is consistent with the (3) record and the (4) testimony.

Finally, the ALJ noted that GAF scores appear in several of the medical records. Id. She stated that she had accorded "little weight" to the GAF scores because they are the clinician's impression of the patient's overall functioning "with dubious applicability to the claimant's social and occupational functioning," because the Commissioner has declined to endorse their use in her disability programs, and because they do not represent longitudinal functioning on an ongoing basis. Id.

**C.      Analysis**

The issue presented to the court is whether the ALJ properly weighed the opinions of Dr. Francis and Dr. Allen and properly accorded greater weight to Dr. Allen's opinion. Although Plaintiff appealed to Ms. Towner's opinion and Dr. Chatain's opinion in her brief, she does not argue that the ALJ erred in weighing those opinions. Therefore, the court does not address the propriety of the ALJ's evaluation of those opinions.

Plaintiff's argument that the ALJ never recognized Dr. Francis's treatment relationship with Plaintiff is belied by the ALJ's recognition that Plaintiff saw Dr. Francis once a month from January 2010 through at least December 2010, whereupon Dr. Francis

prepared his medical source statement. It is true that the ALJ never <u>stated</u> that Dr. Francis was a treating source, but the decision leaves no room for any other conclusion.

The court does not understand Plaintiff's argument that the ALJ "maligned" Dr. Francis by stating that his notes were "brief and predominantly illegible." Plaintiff does not argue that the notes were either extensive or predominantly legible, and the court's review reveals that substantial evidence supports the ALJ's finding. The court cannot find malice or ill will in the ALJ's finding of fact which is supported by the record evidence. Plaintiff's suggestion that the ALJ could have ordered a transcription of Dr. Francis's notes if they were in fact illegible, begs the question how a transcriber could ascertain the content of the illegible notes. While the court recognizes that some medical records contain notes which apparently have been transcribed, and that such transcription is beneficial where a healthcare provider has handwriting which is difficult to decipher but with which the transcriber is familiar, the court fails to see how transcription from illegible notes would provide the same benefit, especially where the transcriber is not familiar with the handwriting at issue or where the notes are not available in a voice recording. Moreover, Plaintiff points to no authority for the proposition that an ALJ must (or should) seek transcription of illegible treatment notes.

Plaintiff's appeal to Dr. Chatain's opinion as support for Dr. Francis's opinion is likewise unavailing. The court fails to see, and plaintiff does not explain, how the fact that Dr. Chatain simply diagnosed mental disorders--PTSD, bipolar disorder, and panic disorder--supports Dr. Francis's opinion regarding marked and extreme limitations in

mental functioning.  As the ALJ noted, Dr. Chatain did not suggest a residual functional capacity, or functional limitations in particular mental abilities.  The ALJ acknowledged that Dr. Chatain recommended continued treatment and medication monitoring, and the ALJ did not find that Plaintiff does not need such continued treatment or has no mental limitations.  Dr. Chatain's report does not suggest error in the ALJ's rationale or require that Dr. Francis's opinion be accorded greater weight.

Plaintiff's argument that "the ALJ failed to provide any further explanation or citation to what specific medical evidence did not support Dr. Francis's opinion" (Pl. Br. 19), misunderstands the responsibility of the ALJ.  As noted above, the ALJ explained her rationale for discounting Dr. Francis's opinion.  She explained that she had discounted the opinion because Dr. Francis (1) did not provide a discussion in support; because (2) his treatment notes were brief, (3) were illegible, and (4) did not support the opinion; because (5) while the treatment notes described chronic, unrelenting anxiety and PTSD in December 2010, they also noted that Plaintiff's mood was relatively stable; and because (6) Dr. Francis assigned a relatively benign GAF score and did not change the score thereafter.  Clearly, the ALJ met her responsibility to explain the basis for her finding regarding Dr. Francis's opinion.  She need not cite every fact supporting her finding. Plaintiff has not shown what further citation or explanation is necessary.  The question is whether substantial record evidence supports the ALJ's rationale.  The reasons given are supported by the evidence, Plaintiff has not shown record evidence which requires a different finding, and the court finds none.

Plaintiff's argument that the ALJ "failed to discuss any of the other regulatory factors, and failed to explain the relative weight accorded to each factor in this case" (Pl. Br. 20), also misunderstands the ALJ's responsibility. The ALJ is required to consider the regulatory factors in evaluating the medical opinions. A review of the reasons given by the ALJ for discounting Dr. Francis's opinion reveals that she considered the regulatory factors. The court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300). Plaintiff cites no authority, and the court is aware of none, requiring an ALJ to explain the relative weight accorded to each factor in her analysis.

The ALJ provided specific, legitimate reasons to discount the opinion of Dr. Francis, and Plaintiff has shown no error in the ALJ's determination. Nevertheless, Plaintiff also argues that it was error to credit the opinion of a nonexamining source, Dr. Allen, over that of a treating source, and that, in any case, Dr. Allen could not have reviewed the entire record because his review occurred more than 14 months before the hearing.

The court finds no error in the ALJ's determination to give "great weight" to Dr. Allen's opinion. To the extent Plaintiff argues that the opinion of a nonexamining source can never be accorded greater weight than the opinion of a treating source, she misstates the law. To be sure, a treating source opinion is generally considered worthy of greater

21

weight than a nontreating source opinion, and a nontreating source opinion is generally considered worthy of greater weight than a nonexamining source opinion. <u>E.g.</u>, <u>Doyal</u>, 331 F.3d at 762; <u>Robinson</u>, 366 F.3d at 1084. However, in this case the ALJ properly discounted the treating source opinion, and Plaintiff points to no other treating or nontreating source opinion which is contrary to the nonexamining source opinion of Dr. Allen. Therefore, Dr. Allen's opinion might be found worthy of greater weight than Dr. Francis's opinion. The question remaining is whether the ALJ's determination to accord "great weight" to Dr. Allen's opinion is supported by the record evidence.

The ALJ explained that she accorded Dr. Allen's opinion "great weight" because Dr. Allen (1) reviewed the entire medical record and (2) is experienced in evaluating mental impairments, and because his opinion is consistent with the (3) record and the (4) testimony. Plaintiff's brief attacks only the first two of these reasons. First, she argues that Dr. Allen cannot have reviewed the <u>entire</u> medical record because his review occurred more than 14 months before the ALJ hearing. (Pl. Br. 19-20). Plaintiff is correct that Dr. Allen did not review the medical records produced or provided to the agency after he provided his opinion on August 24, 2010. However, that fact does not require that less weight be accorded to Dr. Allen's opinion. Dr. Allen did, in fact, review the entire medical record available at the time of his opinion. Moreover, the ALJ gave three other reasons to accord "great weight" to the opinion, and Plaintiff does not even allege error in two of them--that the opinion is consistent with the record as a whole and with the hearing testimony.

22

With regard to reason number two, whether Dr. Allen is experienced in evaluating mental impairments, Plaintiff points out that the record does not list his experience (Pl. Br. 16), and argues that "there is no evidence of <u>any</u> prior experience on the part of Dr. Allen in the record." <u>Id.</u> at 21. While Plaintiff is correct that the record does not contain evidence such as a curriculum vitae regarding Dr. Allen's experience or qualifications, the time to argue that Dr. Allen is unqualified to provide an expert medical opinion in this case is past. At the administrative hearing, Plaintiff's counsel was specifically asked, and asserted that he had no objection to anything in the record, and the evidence, including Dr. Allen's opinions, was admitted into the record without objection. (R. 83). Therefore, any error in accepting Dr. Allen's opinion as expert medical evidence was invited by Plaintiff, and pursuant to the invited error doctrine may not be "corrected" by this court. <u>Eateries, Inc. v. J.R. Simplot Co.</u>, 346 F.3d 1225, 1229 (10th Cir. 2003); <u>John Zink Co. v. Zink</u>, 241 F.3d 1256, 1259 (10th Cir. 2001).

Moreover, the regulations note that state agency psychological consultants, of which Dr. Allen is one, are "highly qualified . . . psychologists who are also experts in Social Security disability evaluation," and require that ALJs "must consider findings of state agency . . . psychological consultants . . . as opinion evidence." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i). Social Security Rulings are to a similar effect. "Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the

administrative law judge and Appeals Council levels of administrative review." SSR 96-6p, West's Soc. Sec. Reporting Serv., Rulings 129 (Supp. 2012). Plaintiff's makes no argument that these regulations or rulings are unconstitutional or otherwise not controlling in this situation. Plaintiff has shown no error in the ALJ's weighing of either Dr. Francis's or Dr. Allen's opinion.

**V.  RFC Assessment**

Plaintiff claims the ALJ failed to base the RFC she assessed upon substantial record evidence, and failed to explain why Dr. Allen's opinion was "more supported by the evidence of record" than was Dr. Francis's opinion. (Pl. Br. 14, 16). She explains why, in her view, the record evidence shows she is more limited than found in the RFC assessed by the ALJ. Id. at 14-17. The Commissioner argues that the ALJ properly assessed RFC, and that substantial evidence supports that assessment.

As the court found above, the ALJ properly evaluated the credibility of Plaintiff's allegations of symptoms and limitations resulting from her impairments, and properly evaluated and weighed the opinions of Dr. Francis and Dr. Allen. Therefore, Plaintiff's argument that the RFC improperly ignored Dr. Francis's opinion and improperly credited Dr. Allen's opinion necessarily fails. The remainder of Plaintiff's RFC argument seeks essentially to have the court reweigh the evidence and substitute its judgment regarding a "proper" RFC assessment for that of the ALJ. The court may not do so. Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172.

Here, the ALJ explained her RFC assessment over four pages of her decision. (R. 19-22). Moreover, her evaluation of the evidence at step three of the sequential evaluation process provides additional context to her RFC assessment. (R. 17-19). The court's review of this analysis satisfies the court that the ALJ based her RFC assessment upon all of the record evidence and properly explained the basis for her assessment.

Plaintiff argues that the mental RFC assessment is vague and does not precisely reflect her mental limitations resulting from bipolar disorder, OCD, or PTSD. However, as the Commissioner argues, Plaintiff does not explain what greater precision or what greater explanation was necessary. The ALJ stated Plaintiff's mental limitations: "She is limited to tasks that can be learned in 30 days or less involving no more than simple work related decisions with few work place changes and no more than occasional or incidental contact with co-workers, the public, or supervisors." The ALJ did not state which limitation was caused by which mental impairment, but Plaintiff does not point to authority requiring such specificity, and the court is aware of none. The findings explain Plaintiff's mental limitations as found by the ALJ, and as the Commissioner points out, the vocational expert was able to testify as to jobs available in the economy which can be performed within those mental limitations. Beyond her appeal to opinion evidence which was discounted by the ALJ, Plaintiff does not point to specific additional limitations which are required by the record evidence. Plaintiff has shown no error in the ALJ's RFC assessment.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 25th day of July 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**